WILLIAM R. McKINLEY AND NINA M. McKINLEY, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
McKinley v. Commissioner
Docket Nos. 4370-75, 4371-75.
United States Tax Court
T.C. Memo 1978-428; 1978 Tax Ct. Memo LEXIS 84; 37 T.C.M. (CCH) 1769; T.C.M. (RIA) 78428; October 30, 1978, Filed Marvin S. Frankel, for the petitioners. Kenneth W. McWade, for the respondent. STERRETT
MEMORANDUM FINDINGS OF FACT AND OPINION STERRETT, Judge: This case was assigned to and heard by Special Trial Judge Randolph F. Caldwell, Jr., pursuant to the provisions of section 7456(c), I.R.C. 1954, and Rules 180, 181 of the Tax Court Rules of Practice and Procedure. Respondent filed an exception to the Special Trial Judge's report, pursuant to Rule 182(c), Tax Court Rules of Practice and Procedure, on August 28, 1978. The Court agrees with and adopts, with minor modifications, the Special Trial Judge's opinion which is set forth below. REPORT OF SPECIAL TRIAL JUDGE CALDWELL, Special Trial Judge: Respondent determined the following deficiencies in petitioner's Federal income tax and additions to tax under section 6653(a): Years
Deficiencies
Additions to Tax
1971
$ 2,731.60
$ 136.58
1972
275.93
13.80
1973
2,102.15
*86 The issues remaining for decision are (1) the deductibility of certain claimed business expenses for meals, lodging, travel fares and automobile use; (2) the amounts and deductibility of alleged charitable contributions; and (3) whether petitioners are liable for additions to tax for negligence or intentional disregard of rules and regulations under section 6653(a) for 1971 and 1972. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts and the exhibits identified therein are incorporated by this reference. At the time of filing their petitions, petitioners resided in Anchorage, Alaska. They timely filed their joint Federal income tax returns for the years in issue with the Regional Service Center in Ogden, Utah. William R. McKinley (hereinafter "petitioner") is an electrician, a member of local 676, Pensacola, Florida. Because of the nature of the electrical construction trade, he has had to travel widely to obtain employment. In December 1970, petitioner was residing in a trailer park located south of Miami, Florida. Having been laid off from a job in the vicinity, he was attempting to sell his trailer before returning to his home and *87 family 160 miles to the north in Melbourne, Florida. At that time he received notice that a job was being held open for him at Bullhead, Arizona. In response to the offer, petitioner drove to Arizona in that same month, taking with him his two children and his wife, who was pregnant at the time. Petitioner and his family rented lodging while in Bullhead, Arizona. However, because of the circumstances surrounding his being hired, petitioner was dismissed at the first lay-off, as he expected, in May 1971. [1]/ While petitioner and his family were in Arizona, his mother had been living in the house he owned in Melbourne, Florida. Petitioner had rented the house to tenants on at least one previous occasion when he and his family were away, but because of costly repairs incurred on his return, he found such an arrangement unsatisfactory. His mother lived there rent free. Although she did pay the utilities, *88 petitioner did sometimes send her money for that purpose. After his dismissal from the Bullhead job, petitioner and his family (which now included a daughter who had been born in April 1971) returned to Florida. They were there only a short time, however, for the reason that petitioner discovered the possibility of employment in Alaska. In May, petitioner, his wife, and children drove north; and, after a short and unsuccessful attempt to find temporary work in Canada, they purchased and moved into a trailer in Anchorage. The employment possibilities which prompted petitioner to go to Anchorage did not immediately materialize, so he traveled to the Fairbanks hiring hall, where openings were rumored to be more imminent. To be eligible for any job that became available there, petitioner had to personally appear at the hiring hall every day. For four weeks petitioner drove from Anchorage to Fairbanks, spent the work week there in his camper truck, and then drove back to spend the weekend with his family in Anchorage. Finally, after about four weeks, petitioner was put to work finishing up the electrical work on a nearly completed building in Fairbanks. Petitioner stayed in *89 a hotel in Fairbanks for the duration of the job, four months, but made seven round trips by air to visit his family, who remained in Anchorage. His initial fare from Anchorage to Fairbanks was paid by the employer. After four months of working in Fairbanks, petitioner was transferred to Galena, Alaska, where he was employed until he was laid off three or four weeks later. While there petitioner's room and board was furnished.He flew home to Anchorage for visits three times. When his employment in Galena was terminated petitioner returned to Anchorage. During 1971, petitioner drove his automobile 17,400 miles to various union hiring halls in search of employment. There were also periods in the following year, 1972, during which petitioner was unable to find employment in Anchorage. Early in the year he flew from Anchorage to San Luis Obispo, California, where he was led to believe there was a position available for him. He rented an automobile to drive from the airport to the hiring hall, where he found that there was in fact no job immediately available. A number of phone calls to union business agents revealed that the outlook was more promising in San Diego, so petitioner *90 traveled by bus to that city and rented a hotel room. After a few daily visits to the San Diego union hiring hall, he was put on a job 20 miles north of San Diego. He rented another car and moved to a motel close to the job site, where he was employed for about five weeks. When he heard of a job in Anchorage, he left California and flew back to Alaska. In the middle of the year, petitioner obtained, through the Anchorage union hiring hall, employment in Soldatna, Alaska. There petitioner worked for four months, staying in a motel, at first by himself, then later sharing a room. Each weekend he flew home to visit his family in Anchorage. Although his employer provided for travel to the job site, it is not clear from the record whether or not a meal allowance was also provided. After he was laid off at Soldatna, petitioner returned to Anchorage. Later in 1972, petitioner flew from Anchorage to Las Vegas, Nevada, after learning from a union business agent that he could probably find work there. When a week's wait there produced no results, petitioner called his various union contacts and discovered an opening at Vero Beach, Florida. Although to save money petitioner set *91 out for Florida by bus, he soon learned that to secure the position he would have to arrive there overnight. As a result, he flew from Houston to West Palm Beach, the location of the union hall which hired for the Vero Beach job. Although the job site was only 90 miles from the house he owned in Melbourne, since petitioner had no means of transportation, he stayed in a motel close to the job site. Petitioner worked on the construction of a nuclear power house at Vero Beach for the final three weeks of 1972 and the first two and one-hale weeks of the new year, until he was laid off. Then after a short visit with his mother, he returned to Anchorage by plane. Petitioner next found employment in Las Vegas, where he worked for a total of three months. He lived in a motel for several days, then spent the rest of his time there in rented rooms in private homes. After three months petitioner quit his job and returned to Anchorage to meet with respondent's representatives to discuss his earlier tax returns.
Although petitioner did not find work immediately upon his return to Alaska, he did eventually find employment at several different Alaskan sites in 1973. For two months he worked *92 in Cordova. He provided his own room and board there. Petitioner was also employed at Eagle River, Alaska, for six weeks. He drove the 24 miles round trip daily from his Anchorage home to the job site and back. He found work in Fairbanks for three weeks. During that time he stayed in Fairbanks during the work week and drove home on weekends, a round trip of 800 miles. While working in Kenai for three weeks, petitioner again drove to Anchorage on weekends, a round trip of 600 miles. Finally, he worked in Bethel and Shemyia for unknown periods. During the periods of 1973 when petitioner was not employed, he reported to the union hall twice daily so that he might learn of any jobs that were posted. The istance from his home to the hall was 10 miles. After coming home for lunch, he would return to the hall in the afternoons. He made these trips 5 days a week for about 15 weeks.
The following schedule shows the amounts petitioner claimed as employee business expense deductions and the portions of those amounts which he substantiated to the respondent's satisfaction: Amount allowed 1971
Amount claimed
by respondent
Meals and lodging
$ 4,012.00 $ 91.50
Auto expenses
3,960.00
0
Travel fares and rentals
1,100.00
378.00
1972
Meals and lodging
$ 2,020.00 $ 123.60
Auto expenses
12.97
0
Travel fares and rentals
1,516.00
119.00
1973
Meals and lodging
1,968.00
190.00
Auto expenses
2,090.00
0
Travel fares and rentals
1,360.00
1,195.97
*93 Respondent contends that those amounts which he did not allow were not substantiated to the extent required by section 274. He also contends that the expenses attributable to the period in which petitioner worked at Bullhead, Arizona are not deductible because petitioner was not "away from home" within the meaning of section 162. During the three years in issue petitioner made contributions to various charigies, including principally his church, and the Salvation Army. He was in the habit of donating to the Salvation Army furniture he had purchased in a town when his employment there was terminated. Petitioner deducted as charitable contributions $ 1,475, $ 642 and $ 801 on his returns for 1971, 1972, and 1973, respectively. The claimed deduction for 1971 includes an $ 800 lump sum contribution to his church. Petitioner's contributions to his church were in the form of loose cash placed in the collection plate. He did not ask for a receipt for any of his donations because he felt "that's only for people showing off". What receipts he did receive had been lost by the time of trial. Respondent disallowed completely the charitable deductions for these three years because of *94 lack of substantiation. OPINION Issue 1. Meals, lodging, travel fares and automobile expenses.
Section 162(a)(2) allows a deduction for "traveling expenses (including amounts expended for meals and lodging * * *) while away from home in the pursuit of a trade or business." To qualify for a deduction under this provision three conditions must be satisfied: (1) The expense must be reasonable and necessary; (2) the expense must be incurred "while away from home"; and (3) the expense must be incurred in pursuit of business. Commissioner v. Flowers,326 U.S. 465, 470 (1946), rehearing denied 326 U.S. 812 (1946). Respondent contends with respect to these three requirements only that expenses incurred while petitioner was employed at Bullhead, Arizona, were not incurred while he was "away from home". Normally the word "home" as used in section 162 means the taxpayer's principal place of employment. Markey v. Commissioner,490 F.2d 1249, 1254 (6th Cir. 1974), revg. a Memorandum Opinion of This Court; Bochner v. Commissioner,67 T.C. 824, 827 (1977). However, there is an exception to this rule when the taxpayer's *95 employment is in an area away from his permanent residence and usual place of employment is temporary rather than permanent or indefinite in duration. Peurifoy v. Commissioner,358 U.S. 59 (1958). As this Court explained in Tucker v. Commissioner,55 T.C. 783, 786 (1971): The purpose of allowing the deduction of living expenses while a taxpayer is "away from home" is "to mitigate the burden of the taxpayer who, because of the exigencies of his trade or business, must maintain two places of abode and thereby incur additional and duplicate living expenses." Ronald D. Kroll,49 T.C. 557, 562 (1968). In furtherance of this purpose, when a taxpayer with a principal place of employment goes elsewhere to take work which is merely temporary, he may deduct the living expenses incurred at the temporary post of duty, because it would not be reasonable to expect him to move his residence under such circumstances. Emil J. Michaels,53 T.C. 269 (1969); Ronald D. Kroll,supra.For this purpose, temporary employment is the type which can be expect to last for only a short period of time. Beatrice H. Albert,13 T.C. 129, 131 (1949). *96 Although respondent concedes that petitioner's employment in Bullhead, Arizona was temporary, the temporary exception does not apply because petitioner was not away from a permanent home while he worked in Arizona. When petitioner took his wife and two children with him to Bullhead, we believe he gave up his Florida home. Petitioner and his immediate family did not return to the Florida house, except for a short visit, before moving to Alaska. In this respect this case resmbles those in which the taxpayer without a permanent home is deemed to carry his home with him "on his back". See Bochner v. Commissioner,67 T.C. 824, 828 (1977); Cf. Rosenspan v. United States,438 F.2d 905 (2d Cir. 1971). In addition, living with his wife and children, petitioner was not burdened by the "additional and duplicate living expenses" for which this provision of the Code was designed. Although his dependent mother lived in his Florida house after petitioner moved out, it is apparent from the record that he did not rent the house because of his previous unhappy experience with tenants. Also, petitioner's mother remained in Florida even after he moved his permanent *97 home to Alaska. We hold that petitioner was not away from home while at Bullhead, Arizona and that therefore his expenses for food for himself and for lodging for himself and his family are nondeductible personal expenses. Respondent concedes that after petitioner and his family arrived in Anchorage, that city became his tax home. Respondent considers petitioner to have been "away from home" while he worked in places other than Anchorage in 1971, 1972 and 1973.However, another hurdle blocks petitioner's deduction of disputed amounts of meals, lodging and fares from these years - the substantiation requirements of section 274. Subsection (d) of section 274 provides as follows: (d) Substantiation Required. - No deduction shall be allowed- (1) under section 162 * * * for any traveling expense (including meals and lodging while away from home), * * *
unless the taxpayer substantiates by adequate record or by sufficient evidence corroborating his own statement (A) the amount of such expense * * * (B) the time and place of the travel * * * [and] (C) the business purpose of the expense * * *. The regulations provide that to satisfy the adequate records requirement, *98 a taxpayer must maintain an account book, diary, statement of expense or similar record and documentary evidence (such as receipts, paid bills) which, in combination, are sufficient to establish each element of an expenditure. Section 1.274-5(c)(2), Income Tax Regs. Similarly, "sufficient evidence" consists of (1) The taxpayer's own statement, whether written or oral, containing specific information in detail as to such element, and (2) other corroborative evidence sufficient to establish such element. Section 1.274-5(c)(3), Income Tax Regs.
Petitioner has offered no evidence other than his own uncorroborated testimony to prove the amounts of the disputed deductions. Although we are certain that petitioner incurred substantial expenses for meals, lodging and travel fares, in the face of section 274(d), we may not approximate such amounts under the rule of Cohan v. Commissioner,39 F.2d 540 (2d Cir. 1930). Sanford v. Commissioner,50 T.C. 823, 828 (1968), affd. per curiam 412 F.2d 201 (2d Cir. 1969), cert. denied 396 U.S. 841 (1969). Reluctantly, we must sustain respondent's disallowance of the deductions for meals, lodging, *99 and travel fares at issue here. Petitioner contends that less stringent substantiation requirements apply because of his exceptional circumstances. Section 1.274-5(c)(4), Income Tax Regs., provides, If a taxpayer establishes that, by reason of the inherent nature of the situation in which an expenditure was made - (i) He was unable to obtain evidence with respect to an element of the expenditure which conforms fully to the "adequate records" requirements of subparagraph (2) of this paragraph, (ii) He is unable to obtain evidence with respect to such element which conforms fully to the 'other sufficient evidence" requirements of subparagraph (3) of this paragraph, and (iii) He has presented other evidence, with respect to such element, which possesses the highest degree of probative value possible under the circumstances, such other evidence shall be considered to satisfy the substantiation requirements of section 274(d) and this paragraph. However, petitioner has made no showing that the inherent nature of the situation prevented him from maintaining an expense diary or obtaining receipts. Proper record keeping was not impossible. Similarly, petitioner's other contentions *100 with respect to this issue are without merit. His records were not lost "due to circumstances beyond the control of the taxpayer" as envisioned by section 1.274-5(c)(5), Income Tax Regs., so that exception does not apply. The portions of section 1.162-17(d), Income Tax Regs., upon which petitioner relies to establish a less stringent substantiation rule are of limited value. They were promulgated before section 274 was enacted, and yield to the requirements of that section. Finally, petitioner asserts that this is not the sort of situation to which section 274 should be applied. This Court, however, has repeatedly applied this Code provision to the unsubstantiated travel expense deductions of itinerant temporary workers. See, e.g. Moretz v. Commissioner,T.C. Memo. 1977-334. The respondent has disallowed entirely petitioner's claimed deduction for business use of his automobile in the three years in question. The uses for which petitioner claims a deduction fall generally into three basic categories - (1) Driving from his home to job sites at which he met the "away from home" requirement, (2) driving to job sites where he was not away from home, and (3) driving *101 to union hiring halls in an attempt to find work. Petitioner drove his car 1400 miles in 1973 in business travel while away from home. This mileage represents a round trip between Anchorage and the Fairbanks job site and one between Anchorage and the Kenai job site. Any substantiated expenses incurred with respect to this travel are deductible under section 162. This allowable mileage does not include weekend trips home, which had no business purpose and are clearly personal. Commissioner v. Flowers,supra;Cervilla v. Commissioner,T.C. Memo. 1976-174. Petitioner also claimed various expenses attributable to travel between his home and job sites which were not away from home, such as the 24-mile round-trip to Eagle River which petitioner drove daily for six weeks in 1973. These expenses are in the nature of commuting expenses, which are nondeductible personal expenses. Section 1.262-(1)(b)(5), Income Tax Regs.Heuer v. Commissioner,32 T.C. 947 (1959), affd. 283 F.2d 865 (5th Cir. 1960). Finally, petitioner drove 17,400 miles in 1971 and 3,000 miles in 1973 to various union hiring halls to seek employment. *102 Since respondent has not challenged the applicability of section 162 to this case, we find that amounts substantiated attributable to this travel are deductible as ordinary and necessary business expenses. Although unemployed, petitioner was still engaged in the electrical construction trade, even though he was not working for any particular employer at these times. Primuth v. Commissioner,54 T.C. 374 (1970). See also Cremora v. Commissioner,58 T.C. 219 (1972). At the present time it is respondent's position that expenses incurred in seeking new employment in the same trade or business are deductible under section 162 if directly connected with that trade or business. Rev. Rul. 75-120, 1975-1 C.B. 55. Petitioner's expenses on trips to the Anchorage union hall in 1973 do not need to meet the substantiation requirements of section 274, since the trips did not constitute travel away from home. Rev. Proc. 63-4, 1963-1 C.B. 474, 475 question and answer 9. However, we feel obliged to limit this mileage to one-half of the claimed amount since 1,500 miles represent trips home for lunch. Expenses for these trips are personal *103 in nature and nondeductible under section 262. The substantiation requirements for the rest of the business mileage deductions are slightly different. Rev. Proc. 70-25, 1970-2 C.B. 506, effective for the years in issue, provides for an optional method for computing automobile expenses, based on twelve cents per mile for the first 15,000 miles and nine cents for each additional mile during the year.It also provides "The provisions of such regulations [under section 274] relating to substantiation of the amount of an expenditure are inapplicable to deductions under this Revenue Procedure." Rev. Proc. 70-25, supra at 507. Petitioner has substantiated time and place, and business purpose of this travel to our satisfaction. We therefore find that he is entitled to a deduction for 17,400 miles of business driving in 1971 and 2,900 miles in 1973. Since petitioner produced no evidence as to his $ 12.97 auto expense deduction for 1972, we uphold respondent's disallowance of that amount. Issue 2. Charitable Deductions.
Respondent disallowed the entire amounts of petitioner's charitable deductions for 1971, 1972 and 1973. We are convinced that *104 petitioner made sizeable donations to his church and other charities within the meaning of section 170. At trial petitioner was generally a straight-forward and honest witness, and he explained the circumstances of many of his various contributions. However, his memory was often hazy and he admitted that some of his testimony was based on estimates. Under these circumstances we believe he has supplied us with sufficient evidence from which approximate contributions may be determined. Cohan v. Commissioner,39 F.2d 540 (2d Cir. 1930). Bearing heavily upon petitioner, "whose inexactitude is of his own making" we hold that he is entitled to charitable deductions of $ 885 for 1971, $ 385 for 1972, and $ 480 for 1973. Issue 3. Negligence penalty.
The final issue is whether respondent properly determined an addition to tax under section 6653(a), which provides that if any part of an underpayment of tax is due to negligence or intentional disregard of rules and regulations, there shall be added to the tax an amount equal to 5 percent of the underpayment. Respondent asserts that petitioner's failure to maintain adequate records to support his claimed deductions *105 for employee business expenses for 1971 and 1972 constitutes negligence or intentional disregard. Petitioner kept records which were adequate to show his income, and he did have adequate records to substantiate some of his business meals, lodging and travel fare deductions. Respondent allowed these amounts. The bulk of the remaining expense deductions were disallowed because of petitioner's failure to keep the detailed receipts, and diary required by section 274. The fact that we do not consider petitioner's records adequate to comply with the provisions of section 274 does not require the conclusion that he has been negligent or in intentional disregard for respondent's rules and regulations in the manner in which he maintained his records. Robinson v. Commissioner,51 T.C. 520, 542 (1968), affd. per curiam and remanded, 422 F.2d 873 (9th Cir. 1970). Another portion of petitioner's business deduction for 1971 was disallowed only after the complicated determination of whether or not he was "away from home". Under these circumstances, we hold that petitioner is not liable for the addition to tax for negligence provided by section 6653(a). Decision *106 will be entered under Rule 155. Footnotes
1. /↩ It appears that petitioner had been employed on the Bullhead job site a few years earlier, but had been dismissed when he refused to cross a picket line. The December 1970 offer came as a result of an NLRB decision ordering his reinstatement with back pay.