Leonard F. Cremona and Marie Cremona, Petitioners *v.* Commissioner of Internal Revenue, Respondent

Docket No. 7121–70. Filed May 4, 1972.

---

Leonard F. Cremona, pro se.
*George J. Mendelson*, for the respondent.

QUEALY, *Judge:* The respondent determined a deficiency in income tax due from the petitioner in the amount of $572.80 for the taxable year 1968. All adjustments of income giving rise to the deficiency have been agreed to by the parties except for the disallowance by the respondent of the deduction of $1,500 paid by Leonard F. Cremona to a job-counseling organization in 1968.

### FINDINGS OF FACT

Some of the facts have been stipulated. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference.

Leonard F. Cremona and Marie Cremona are husband and wife whose legal residence at the time of filing the petition herein was Saddle Brook, N.J. They filed a joint Federal income tax return for the calendar year 1968 with the district director of internal revenue at Philadelphia, Pa. Marie Cremona is a party to this action solely by virtue of having filed a joint return; consequently, Leonard F. Cremona will hereinafter be referred to as petitioner.

On or about January 26, 1968, petitioner entered into a contract with Harvard Executive Research Center, Inc. (hereinafter referred to as HERC), a so-called employment-counseling organization for job counseling and referral services. At that time, and up until the hearing in this case, petitioner was employed by Isotopes, Inc., as an "administrator." In seeking new employment, he desired a position similar to the type which he held as an employee of Isotopes, Inc.

Pursuant to the contract, HERC provided petitioner with counseling services and developed prospective job openings. While the counseling work was completed in 1968, the prospective job opportunities which developed therefrom arose in subsequent years. In no case was actual employment offered to petitioner as a result of the services of HERC. The petitioner attributes the lack of tangible results to economic conditions and still claims to be hopeful that an offer will develop as a result of HERC's prior efforts.

### OPINION

Petitioner contends that the fee of $1,500 paid HERC in 1968 is deductible either as a trade or business expense under section 162(a)[1] or an expense incurred in the production of income under section 212.

---

[1] All statutory references are to the Internal Revenue Code of 1954, unless otherwise indicated.

In support thereof, petitioner cites *David J. Primuth*, 54 T.C. 374 (1970) ; *Guy R. Motto*, 54 T.C. 558 (1970) ; and *Kenneth R. Kenfield*, 54 T.C. 1197 (1970).

The respondent seeks to distinguish the cases relied upon by the petitioner on the ground that the services for which the petitioner incurred an expenditure of $1,500 failed to produce any results. In this respect, as respondent points out, in the cited cases the taxpayer either obtained a new job as a result of the expenditure in question or was offered a job. Where neither a job nor an opportunity of employment results from the expenditure, the respondent would deny the deduction, citing *Eugene A. Carter*, 51 T.C. 932 (1969).

At the outset, we believe that the *Carter* case is distinguishable in that the taxpayer in that case was in the military service. He sought the assistance of a job-counseling organization in order to obtain employment upon his release from the service. We do not regard that decision as applicable to a case where the taxpayer is in the trade or business represented by his existing employment and merely seeks to obtain a better job in that trade or business. As this Court clearly indicated in *Kenneth R. Kenfield*, *supra*, that question remains to be decided.

In Rev. Rul. 60–223, 1960–1 C.B. 57, the respondent flatly stated that fees paid to employment agencies for securing employment were properly deductible.[2] From time to time, the respondent has unsuccessfully sought to impose conditions upon the deductibility of such fees before this Court. Thus in *David J. Primuth*, *supra*, respondent argued that the ruling only covered a situation where the fee was contingent upon the securing of a job and not the situation where the fee was payable in any event. The Court rejected that position, concluding that, because the petitioner in that case was virtually guaranteed new employment by the employment agency, the distinction between contingent fees and fees payable in all events was "a distinction without a difference." *David J. Primuth*, *supra* at 380. We held that the expenditures by the taxpayer in securing new employment were incurred while carrying on a trade or business and were therefore deductible under section 162. We reaffirmed our position in *Guy R. Motto*, *supra*. Finally, in *Kenneth R. Kenfield*, *supra*, the respondent argued that the fees paid to the employment agency were not deductible because the petitioner had not accepted the job offer which had been elicited through the agency. Again, in rejecting the respondent's position, this Court concluded that the amount was deductible because not only did the agency assist the taxpayer in procuring the

---

[2] Rev. Rul. 71–308, 1971–2 C.B. 167, adds the requirement that a new job must be secured as a result of the expenditure.

offer of a new job but a promotion obtained from his existing employer was a direct consequence thereof.

We are unable to distinguish in principle the right of petitioner to deduct the cost of seeking a new job in this case from the similar costs incurred by the taxpayers in *Primuth*, *Motto*, and *Kenfield*.

In the instant case, the petitioner was engaged in the trade or business of being an "administrator," an occupation which developed along with the expansion of defense contracting. Having concluded in *Primuth*, *Motto*, and *Kenfield* that a corporate executive or an engineer could be in a trade or business, logic compels us to extend the same rule to an "administrator." The petitioner in good faith engaged the services of HERC in order to improve his job opportunities in that trade or business. In our opinion, the expenditure was no less an expense of the trade or business merely because, through economic conditions or otherwise, the petitioner did not succeed in obtaining a better job.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

GOFFE, *J.*, concurs in the result.

---

DRENNEN, *J.*, concurring: The opinion in this case, which was originally released as a Memorandum Opinion, was recalled for consideration by the entire Court when it was realized that it represented an extension of the doctrine adopted by the majority of this Court in *David J. Primuth*, 54 T.C. 374, *Guy R. Motto*, 54 T.C. 558, and *Kenneth R. Kenfield*, 54 T.C. 1197. Also see *Carson J. Morris*, T.C. Memo. 1967–251, affd. 423 F.2d 611 (C.A. 9), wherein this Court reached the opposite conclusion on similar facts.

In *Primuth* and *Motto*, the employment agency obtained new positions for the taxpayers, and the fees were held to be deductible. In *Kenfield* the employment agency found a new position for the taxpayer which he accepted but did not take because his present employer increased his compensation to meet the offer, and we held the fee was deductible. In this case the employment agency did not find a new position for the taxpayer but we conclude the fee is deductible. By approving this opinion this Court has made clear its position that the deductibility of the fee is not dependent on whether the employment agency obtains a new position for the taxpayer, i.e., that "securing" of a new position for the taxpayer, as contrasted with "seeking" a new position for him, is not the sine qua non of the deduction.

While "my heart and mind are [still] with the dissent in *Primuth*," see concurring opinion of Judge Tietjens in *Guy R. Motto*, *supra*, I

must accept the views of the majority that such fees are related to the taxpayer's current business of being an employee (which, contrary to Judge Tannenwald's concurring opinion in *Primuth*, I think may well open up a Pandora's box of unjustified deductions), and that being so, I think this is a reasonable extension or application of that philosophy.

WITHEY and HOYT, *JJ.*, agree with this concurring opinion.

---

TANNENWALD, *J.*, concurring: I think it important to note that the majority decision herein effectively relegates to oblivion the attempt by respondent, after our decision in *David J. Primuth*, 54 T.C. 374 (1970), to breathe continued life into the seeking-securing distinction insofar as the deductibility of employment agency fees is concerned. See Rev. Rul. 71–308, 1971–2 C.B. 167.

In addition, rather than speculate broadly on the quantitative scope of legislative intention regarding expenses connected with an income-producing activity, I would prefer to have my position rest on the common understanding of the clause "ordinary and necessary expenses paid or incurred * * * in carrying on any trade or business." See my concurring opinion in *David J. Primuth*, 54 T.C. at 382.

The delineation of guidelines to avoid an unduly broad application of our approach herein is not an insuperable task. In the case of single-purpose expenditures, a simple comparison of the position which the taxpayer occupied before and after the anticipated change would suffice. See my concurring opinion in *David J. Primuth*, *supra*. Compare sec. 1.162–5(b)(3), Income Tax Regs. In the case of dual- or multiple-purpose expenditures, the presence of a direct relationship and a dominant or primary motive would be the critical factors. Compare *United States* v. *Generes*, 405 U.S. 93 (1972); secs. 1.162–2(b), 1.162–5(d), and 1.162–5(e), Income Tax Regs.

RAUM and DAWSON, *JJ.*, agree with this concurring opinion.

---

STERRETT, *J.*, concurring: It is now obvious that the position of this Court is that there is no valid distinction between an expense incurred in securing employment and in seeking employment; a distinction which at best had only been available to clairvoyants in tax law.

The effect of this decision is simply to accept the fact that Congress has expressed a willingness to encourage any expenses necessary to maintain an existing income-producing activity. By so doing it encourages activities which increase the revenue due the Federal Government. It does not follow from this, however, that Congress intended

224

to lend its support to every money-making scheme conceived of by an employee.

The deductible expenses of any employee are circumscribed by his particular trade or business. For example, expenses related to changing one's basic skills or incurred without an income-producing motive cannot be deemed to be incurred in an employee's trade or business. In fact it may well be appropriate to consider the dominant motive of the taxpayer in incurring an asserted section 162 expense just as the Supreme Court did in interpreting the taxpayer's motive in making a loan in *United States* v. *Generes*, 405 U.S. 93 (1972).

Any fears that Pandora's box, now surely hingeless so often has it been opened, has been breached by this decision and its progenitors may rest in peace. The courts have been, and remain, well-equipped to separate the wheat from the chaff.