WILLIAM L. PIERCE AND PAULA PIERCE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Pierce v. Commissioner
Docket No. 24782-84.
United States Tax Court
T.C. Memo 1986-552; 1986 Tax Ct. Memo LEXIS 55; 52 T.C.M. (CCH) 1036; T.C.M. (RIA) 86552; November 18, 1986. William L. Pierce, pro se. John Naumann Strange, for the respondent. TANNENWALD
MEMORANDUM FINDINGS OF FACT AND OPINION TANNENWALD, *56 Judge: Respondent determined a deficiency in the amount of $8,783.12 in petitioners' Federal income tax for the taxable year ended December 31, 1980. The sole issue is whether a $25,000 loss sustained by petitioners should be treated as a business bad debt under section 166(a) [1], deductible as an ordinary loss, or as a nonbusiness bad debt deductible as a short-term capital loss under section 166(d). Respondent does not dispute the existence or amount of the bad debt or the year of the deduction. FINDINGS OF FACT Some of the facts have been stipulated and are so found. This reference incorporates the stipulation of facts and attached exhibits. Petitioners resided in Bethesda, Maryland at the time they filed their petition in this case.They timely filed their joint Federal income tax return for the taxable year 1980. Paula Pierce is a petitioner herein solely by reason of having filed a joint return. Hereinafter, all references to "petitioner" are to William L. Pierce. *57 On September 5, 1979, petitioner formed a partnership, PHM Publishing Company ("PHM"), with Ray C. Henry ("Henry") and A. Bruce Matthews who collectively comprised the Henry Group. He invested $25,000 in PHM in exchange for a 50-percent partnership interest. PHM was formed to publish a newsletter on international human services. Petitioner agreed to edit the newsletter published by PHM and was to be paid $1,000 per month for his work. He worked at least 20 hours per week as editor of the newsletter. On December 31, 1979, PHM was dissolved at the request of petitioner because the first newsletter developed by petitioner and entitled "International Social Services Reports" had not yet been published, and he felt Henry was devoting too much time to his other businesses [2] and not enough time to the partnership. Pursuant to the dissolution agreement, the Henry Group, represented by Henry, signed a promissory note dated December 31, 1979, agreeing to pay petitioner $25,000 on December 1, 1980. The note represented the return of petitioner's investment in PHM. The $25,000 was available to *58 pay petitioner's investment in cash, but Henry was desirous of retaining that cash at the time PHM was dissolved because he wanted to avoid accentuating an existing cash flow problem with respect to the publication of his other newsletters. The note became worthless during the taxable year 1980. Other than the note, petitioner never received any of his original $25,000 investment in PHM after it was dissolved. The dissolution agreement also provided that the Henry Group would retain all rights to International Social Services Reports and petitioner agreed under paragraph four of said agreement to: make his services available to "Henry" for development, editorial and other purposes related to the launching of International Social Services Reports * * * in return for remuneration and other considerations to be mutually agreed to at a later date by [petitioner] and "Henry." After PHM was dissolved, petitioner worked at least 15 hours per week in providing the consultation services and research referred to above, but never received any wages or compensation for such services. He did this hoping to build a financially beneficial relationship with Henry which was also his objective *59 in accepting the $25,000 note for his interest in PHM.Henry would have used the services of petitioner after PHM was dissolved even if the $25,000 loan was not made, although if choosing between two equally qualified prospective hiring possibilities, petitioner would have been preferred as a result of his making the loan. Petitioner's trade or business during 1979 and 1980 was writing and publishing. From January 1971 until September 1980, petitioner was a valuable full-time employee for the Child Welfare League, except for the six-month period from September 1, 1979 until March 1, 1980, during which time he took sabbatical leave so that he might join PHM as editor. Petitioner voluntarily resigned from his job at the Child Welfare League in September 1980, because of difficulties with his superior and the availability of an opportunity for petitioner with a new organization in the publishing field. OPINION The issue involved in this case can be simply stated. Was the $25,000 loan from petitioner to Henry (which respondent concedes became worthless in 1980) sufficiently proximately related to petitioner's trade or business as a newsletter writer so as to entitle petitioners *60 to a business bad-debt deduction under section 166(a). Petitioner urges us to give a positive answer to this question. He asserts that since he could have been paid in full at the time the PHM partnership was dissolved in 1979, the loan had an independent genesis and was designed to encourage Henry to utilize petitioner's services for which he would receive compensation. Respondent counters that our answer should be in the negative and that petitioners are therefore entitled to a deduction only as a nonbusiness bad debt under section 166(d). The foundation of respondent's position seems to be that the loan represented no more than a transmutation of petitioner's PHM partnership interest. [3] Thus, respondent asserts that petitioner's dominant motive was to protect that investment rather than to stimulate Henry's use of petitioner's future services as a newsletter writer. In determining whether a loss qualifies as a business bad debt under section 166(a), a taxpayer must prove that such loss is proximately related to his trade *61 or business at the time of worthlessness. United States v. Generes,405 U.S. 93, 96 (1972); Section 1.166-5, Income Tax Regs. This proximate relationship may be established "by proof that his dominant motivation in incurring the debt was to protect his employment." Scifo v. Commissioner,68 T.C. 714, 723 (1977). Such a determination is one of fact and the burden of proof is on petitioners. Putoma Corp. v. Commissioner,66 T.C. 652, 673 (1976), affd. 601 F.2d 734 (5th Cir. 1979). We hold that petitioners have carried their burden. To begin with, we are satisfied that petitioner could have received the $25,000 he invested in PHM at the time of its dissolution. Henry categorically supported petitioner's testimony in this respect, and we have no reason to doubt his word. Although the books and records of PHM were not put into evidence, it is clear to us that Henry was willing to cover petitioner's $25,000 investment from his own resources if necessary. Given the estimate of $2,000,000 annual sales of Henry's publishing enterprises, we think it reasonable to conclude that funds in that amount could have been made available *62 for payment to petitioner, despite the existence of Henry's cash flow problem. Having concluded that the $25,000 could have been paid, we must determine what purpose was to be served in petitioner's loaning of such amount to Henry. The record is clear that petitioner's employment with Child Welfare was coming to an end and that he was in need of obtaining other outlets for his services. Henry's publications were an obvious resource and, although the PHM partnership with Henry had not worked out, it appears that the relationship between petitioner and Henry was, and still remains, a good one. We recognize that the record herein is not crystal clear whether Henry solicited the loan or gave petitioner any encouragement to the effect that the loan might facilitate his use of petitioner's services.However, Henry did indicate that if he had to choose in hiring between petitioner and another person of equal talent, the loan would have dictated that petitioner get the nod. In the absence of countervailing evidence, we think this is enough to tip the scales in petitioner's favor. We recognize the fact that petitioner was under no binding agreement to receive a salary from Henry at the *63 time he made the loan is a factor which tends to reduce the likelihood that his employment status was the dominant motivation behind his loan, for "a loan motivated by one's status as an employee seems more plausible where its objective is to protect a present salary, rather than promote a future one." Putoma Corp. v. Commissioner,supra at 674. However, there is no hard and fast rule that a taxpayer must be in present receipt of salary at the time he incurs a debt in order for it to be related to the protection of his employment status. [4] Moreover, the fact that petitioner's loan did not result in his achieving his desired goal, namely a permanent employment position with Henry, does not transform the nature of his loss from a business to a nonbusiness bad debt. Cf. Cremona v. Commissioner,58 T.C. 219, 222 (1972). Paragraph four of the dissolution agreement specifically provided for the future use of petitioner's services in return for a fee, and we think that this is sufficient, in the context of the totality of the facts of this case, including the fact that petitioner actually provided some of those services, albeit without receiving any *64 compensation therefor. In short, since we think there can be no argument that petitioner was engaged in the trade or business of writing and publishing newsletters, by way of employment as a consultant or an employee, we conclude that petitioner made the $25,000 loan to Henry in furtherance of that trade or business. Accordingly, petitioners are entitled to a business bad-debt deduction under section 166(a). Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the year at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Henry was involved in the publication of about 23 different newsletters in 1979.↩
3. If the loan represented no more than a transmutation of petitioner's partnership interest, the loss would be a capital loss. Sections 731 and 741.↩
4. Goodenough v. Commissioner,T.C. Memo 1980-28↩.