HERMAN AND ELIZABETH CAMPANA, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Campana v. Commissioner
Docket No. 11047-88
United States Tax Court
T.C. Memo 1990-395; 1990 Tax Ct. Memo LEXIS 412; 60 T.C.M. (CCH) 289; T.C.M. (RIA) 90395; July 30, 1990, Filed *412 Decision will be entered under Rule 155. Curtis W. Berner, for the petitioners. Pamela S. Wilson, for the respondent. PAJAK, Special Trial Judge. PAJAK
MEMORANDUM OPINION This case was assigned pursuant to the provisions of section 7443A(b) and Rule 180 et seq. (All section numbers refer to the Internal Revenue Code in effect for the taxable year in issue. All rule numbers refer to the Tax Court Rules of Practice and Procedure.) Respondent determined a deficiency in petitioners' 1984 Federal income tax in the amount of $ 2,530.00. After concessions, the Court must decide whether petitioner-wife is entitled to a depreciation deduction for an automobile used in her job search and to a deduction for related automobile operating expenses. To the extent stipulated, the facts are so found. Petitioners resided in San Carlos, California, when they filed their petition. For convenience, we have combined the findings of fact and opinion. Starting in 1973, petitioner Elizabeth Campana (petitioner) was employed as an administrative secretary with Toyota Motor Distributors, Inc. (Toyota) in South San Francisco. Toyota relocated to San Ramon and petitioner commuted daily about 100 miles *413 round trip between her home and San Ramon for about one year. Petitioner quit her job on January 31, 1984, because of the stress of the long commute. On January 9, 1984, petitioner purchased a 1981 Cadillac El Dorado (Cadillac). The parties agreed at trial that the basis of the Cadillac was $ 16,459.05. Petitioner used the Cadillac in her job search. Petitioner searched for employment as an administrative secretary from February 6, 1984 through November 10, 1984, but failed to locate employment. Petitioner was unemployed from February 1, 1984 through May 1987. In 1984, petitioner received unemployment compensation of $ 5,966.00 and was required to report job searches to the Employment Development Department, State of California. The parties stipulated that petitioner drove 4,625 miles in search of employment during 1984. Petitioner used the Cadillac in her job search almost daily during the period of February 6, 1984 through November 10, 1984. On their 1984 Federal income tax return, petitioners deducted $ 7,904.00 of employee business expenses in seeking work and an investment tax credit of $ 409.00. Of the $ 7,904.00, $ 6,654.00 was deducted for depreciation on the Cadillac, *414 which included an election under section 179 to expense $ 5,000.00 of the cost of the Cadillac. Respondent disallowed the claimed deduction of $ 7,904.00 and the investment tax credit. Petitioners have conceded the disallowance of the investment tax credit. A taxpayer is entitled to deduct a reasonable allowance for the exhaustion, wear, and tear of property used in the taxpayer's trade or business. Sec. 167(a). To qualify for a depreciation deduction, petitioners must show that the automobile was used in a trade or business within the meaning of section 167. Beck v. Commissioner, 85 T.C. 557, 569 (1985); Welch v. Helvering, 290 U.S. 111 (1933); Rule 142(a). This Court has consistently held that a taxpayer may be in the trade or business of being an employee in a particular trade or business. Primuth v. Commissioner, 54 T.C. 374, 377 (1970) (corporate executive); Cremona v. Commissioner, 58 T.C. 219 (1972) (administrator); Motto v. Commissioner, 54 T.C. 558 (1970) (engineer); Charlton v. Commissioner, T.C. Memo. 1988-515 (plumber); Cornutt v. Commissioner, T.C. Memo. 1983-24 (certified public accountant). Those cases also held that job hunting expenses are deductible if incurred *415 while seeking employment in the taxpayer's same trade or business. There is no question but that petitioner was in the trade or business of being an employee as an administrative secretary in January 1984. Respondent at trial argued that petitioner was not in a trade or business because she was unemployed at the time she sought new employment. However, a taxpayer who is unemployed when job hunting expenses are incurred is viewed as engaged in the business of providing the same type of services as performed for the previous employer as long as there is not a substantial lack of continuity between the time of the prior employment and the seeking of new employment. Estate of Rockefeller v. Commissioner, 762 F.2d 264, 270 (2d Cir. 1985), affg. 83 T.C. 368 (1984); Sherman v. Commissioner, T.C. Memo. 1977-301. Respondent's published position is consistent with these principles. See Rev. Rul. 75-120, 1975-1 C.B. 55, clarified by Rev. Rul. 77-16, 1977-1 C.B. 37. We hold that during the year in issue petitioner was in a trade or business of being an administrative secretary while unemployed and looking for a new job. She began looking for the same type of position she held while at Toyota *416 within one week after terminating that employment. The fact that petitioner did not find work in the year in issue does not alter our finding because she is not required to find a new job in order to deduct job hunting expenses. Cremona v. Commissioner, 58 T.C. 219, 222 (1972). Respondent argued that the definition of a trade or business for section 167 depreciation purposes is different from that of the definition for section 162 employee expense purposes. We do not agree. The trade or business requirements for section 167 are the same as those for section 162. Lemmen v. Commissioner, 77 T.C. 1326, 1340 n. 16 (1981). In Charlton v. Commissioner, T.C. Memo. 1988-515, the taxpayer-plumber drove 8,000 miles to seek employment. This Court stated that because the taxpayer "introduced no evidence of actual costs," mileage costs for the local transportation were determined at the standard mileage rate under Rev. Proc. 83-74, 1983-2 C.B. 593. During the trial, respondent conceded that petitioner was entitled to a deduction for job hunting expenses, but seeks to limit the deduction for this local travel by the standard mileage rate. What respondent overlooks is that the standard mileage *417 rate is an optional method in lieu of "all operating and fixed costs of the automobile" used for business purposes. Rev. Proc. 82-61, 1982-2 C.B. 849, 850. Accordingly, the standard mileage rate includes an allowance for depreciation, as well as for maintenance and repairs, tires, gasoline, oil, insurance, and registration fees. Further, this depreciation allowance will reduce basis in determining adjusted basis under section 1016. Rev. Proc. 82-61, 1982-2 C.B. 849, modified by Rev. Proc. 83-74, 1983-2 C.B. 593, and further modified by Rev. Proc. 84-72, 1984-2 C.B. 735. For 1984, the standard mileage rate was 20.5 cents per mile for the first 15,000 miles of business use and 8 cents or 39 percent of that 20.5 cents was attributable to depreciation. Rev. Proc. 83-74, 1983-2 C.B. 593, as modified by Rev. Proc. 84-72, 1984-2 C.B. 735. By conceding that petitioner is in a trade or business for standard mileage rate purposes, respondent in effect is conceding that petitioner is in a trade or business for the actual expenses method, which includes depreciation. Petitioner elected to expense the cost of her Cadillac as "section 179 property." Sec. 179(a). Section 179(d) defines "section 179 *418 property" as "any recovery property which is section 38 property and which is acquired by purchase for use in a trade or business." Petitioner purchased her Cadillac on January 9, 1984, while she was employed by Toyota. The Cadillac was purchased as a family car because petitioners needed a new car. Since the Cadillac was not purchased for use in a trade or business, petitioner is not entitled to deduct $ 5,000.00 under section 179. We now turn to petitioner's use of her family car in her trade or business of being an administrative secretary. For property placed in service after December 31, 1980, section 168 established the accelerated cost recovery system (ACRS) of depreciating "recovery property." Recovery property is defined as tangible property subject to a depreciation allowance used in a trade or business or held for the production of income. Sec. 168(c)(1). The deduction allowed under section 168 is deemed a reasonable allowance for section 167 purposes, except for one non-applicable section. Sec. 167(a). Generally, the ACRS deduction for recovery property for any taxable year equals the aggregate amount determined by multiplying the unadjusted basis by the applicable *419 annual percentage rate. [1]
In McKnight v. Commissioner, T.C. Memo. 1990-69, we explained that: Under the ACRS system, personal property placed in service late in a taxable year may be eligible for the same amount of depreciation that would be allowed if the property had been placed in service at the beginning of the year. (The foregoing rules were changed by the Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2085, 2121.) (Fn ref. omitted.)
Because petitioner used her car for business and personal purposes, an allocation between business and personal use of petitioner's Cadillac must be made. Henry Schwartz Corp. v. Commissioner, 60 T.C. 728, 744 (1973).Petitioner used her Cadillac to seek work from February 6, 1984, to November 10, 1984. On her return, petitioner took the position as to miscellaneous expenses that she used the Cadillac 71.894 percent for business use. She did not prove that the yearend mileage used to compute the percentage was correct. Although petitioner did not establish the extent to which she used the Cadillac for personal use, *420 based upon the manner in which this case was presented by the parties, we find that petitioner used the Cadillac for personal purposes 30 percent of the time during 1984. Accordingly, we conclude that in 1984 petitioner may depreciate 70 percent of the Cadillac for business use. Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930).Of the agreed upon basis of $ 16,459.05 for the Cadillac, $ 11,521.34 is deductible under section 168 at the rate of 25 percent. Thus, we allow her a depreciation deduction of $ 2,880.34 for 1984. Petitioner substantiated total automobile operating expenses of $ 1,400.73 for 1984. Using the 70 percent business allocation set forth above, we will allow petitioner a deduction of $ 980.51 for automobile operating expenses. Thus, for 1984, petitioner is entitled to deduct as job hunting expenses a total of $ 3,860.85, which includes the $ 948.00 conceded by respondent during the trial. Decision will be entered under Rule 155. Footnotes
1. In this case, respondent did not raise the applicability of section 168(f)(5)↩ and the proposed regulations thereunder, nor do we.