T.C. Memo. 1996-321

UNITED STATES TAX COURT

JOELLEN MILLER MURATA, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 2166-95.                              Filed July 15, 1996.

JoEllen Miller Murata, pro se.

<u>Michele Or</u> and <u>Louise Pais</u>, for respondent.

MEMORANDUM OPINION

NAMEROFF, <u>Special Trial Judge</u>:  This case was heard pursuant
to the provisions of section 7443A(b)(3) and Rules 180, 181, and
182.[1]  Respondent determined a deficiency in petitioner's 1991
Federal income tax in the amount of $1,628.

---

[1]  Unless otherwise indicated, all section references are to
the Internal Revenue Code in effect for the year at issue.  All
Rule references are to the Tax Court Rules of Practice and
Procedure.

After concessions, the issues for decision are: (1) Whether petitioner is entitled to a Schedule A deduction for "research" expenses in excess of the amount previously allowed by respondent; (2) whether petitioner is entitled to a Schedule A deduction for job search expenses; and (3) whether petitioner is entitled to a Schedule A deduction for "not-for-profit" rental expenses.

Some of the facts have been stipulated, and they are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. At the time of the filing of this petition, petitioner resided in Chatsworth, California.

In 1961, petitioner received her bachelor of arts in nursing from Syracuse University. In 1972, petitioner received a master's degree in Public Health from the University of California at Berkeley and completed the Family Nurse Practitioner Program at the University of California at Davis. In 1982, petitioner received a Ph.D. in sociology and family therapy from the University of Southern California.

Petitioner has been involved in the field of nursing in various capacities since her graduation from Syracuse in 1961. During the late 1960's petitioner was employed as a nurse in a hospital and public health agency. Since 1972, petitioner has been employed as a nurse practitioner in association with teaching responsibilities at various universities. Her teaching

responsibilities include teaching nursing, performing research projects related to the origins of juvenile delinquency and other research projects, and directing a number of Federal grants related to the training of nurse practitioners.

In 1991, petitioner resided in Rochester, New York, and was employed by the University of Rochester School of Nursing (UR) as an Assistant Professor of Nursing.

During 1991, petitioner attended and presented a paper at the Second International Family Nursing Conference in Portland, Oregon, which was held from May 21, 1991, through May 24, 1991. Petitioner drove from Rochester, New York, to Portland, Oregon, to attend the conference. Petitioner left Rochester, New York, on May 16, 1991, and arrived in Portland, Oregon, on May 20, 1991.

After the conference, petitioner drove to Los Angeles, California, where she was employed as a consultant during the summer. While in Los Angeles, petitioner used her car for transportation in and around Los Angeles. At the end of the summer, petitioner drove back to Rochester to resume her teaching responsibilities at UR. Petitioner's husband, Paul Ganong, drove back to Rochester with petitioner.

Petitioner also attended the American Public Health Association 119th Annual Meeting, in Atlanta, Georgia, which was held from November 10, 1991, through November 14, 1991. In

addition, petitioner attended the National Council for Family Relations 1991 Conference in Denver, Colorado, which was held from November 15, 1991, through November 20, 1991.  Petitioner presented papers at both conferences.

In the stipulation of facts, respondent conceded that petitioner was entitled to "research" expenses in the amount of $3,443.89.  The following reflects how respondent computed the amount conceded:  (1) Expenses related to the Second International Family Nursing Conference held in Portland, Oregon, from May 21, 1991, through May 24, 1991, including mileage of 2,752 at 27.5 cents per mile from Rochester, New York, to Portland, Oregon, or $756.80; hotels of $489.59; meals at $26 per day for 9 days less 20 percent pursuant to section 274(n), or $187.20; and tolls of $9.40; (2)  Expenses related to the American Public Health Association 119th Annual Meeting in Atlanta, Georgia, on November 13, 1991, and the National Council for Family Relations 1991 Conference in Denver, Colorado, on November 19, 1991, including airfare of $392; hotels of $384.76; miscellaneous of $17.80; and meals at $34 per day for 9 days less 20 percent pursuant to section 274(n), or $244.80; and (3) other expenses including books of $241.82; materials of $129.92; professional of $361.50; and miscellaneous of $228.30.[2]

---

[2]  UR has a reimbursement program regarding travel expenses, which generally allows reimbursement for registration or

(continued...)

Sometime in 1990, petitioner experienced financial difficulties and began to seek new employment that would pay a higher salary. In 1990, petitioner sent resumes and her curriculum vitae to potential employers.

On December 15, 1990, petitioner flew from Rochester, New York, to Los Angeles, California, returning on January 7, 1991. During this trip, petitioner stayed at the home she owned in Chatsworth, California, in which one of her sons resided. During this period, petitioner's job search activities included organizing her materials, making telephone calls to California State University at Northridge (CSUN) and the University of Southern California regarding potential employment, and sending resumes to various health care organizations in the Los Angeles area. Petitioner testified that she mailed resumes from Los Angeles because she wanted to make local telephone calls regarding the proper person to whom she should send the resume, she wanted to follow up the resume with a telephone call, and she wanted to be available should the opportunity to interview arise. Petitioner had no interviews during this period.

On December 18, 1991, petitioner flew from Rochester, New York, to Los Angeles, California, returning on December 31, 1991.

---

[2](...continued)
conference fees. No issue was raised in this case regarding any amount not deductible because of petitioner's failure to seek appropriate reimbursement from UR.

Again, petitioner stayed at the home she owned in Chatsworth in which her son lived. On December 19, 1991, petitioner interviewed with Dr. Alocer and his faculty department at CSUN. In addition, on December 30, 1991, petitioner interviewed with Colleen McLaughlin at the Kaiser Research Group in Pasadena. During her stay in Los Angeles, petitioner also made telephone calls regarding the resumes that she had sent the previous January.

In 1991, petitioner's former spouse, Paul Ganong, created watercolor paintings and sculptures that were exhibited and sold in a gallery. Mr. Ganong flew from Rochester, New York, to Los Angeles, California, on July 31, 1991. Mr. Ganong traveled to Los Angeles to look for employment in the art field, such as a gallery. Rather than using the return portion of his airplane ticket to Rochester, Mr. Ganong and petitioner drove back to Rochester after her summer consulting job ended. The marriage of petitioner and Mr. Ganong was dissolved by the Superior Court of California, in the County of Los Angeles, on December 7, 1994.

Petitioner's brother, Peter Miller, is a skilled woodworker in the Adirondack style of woodworking. Mr. Miller is self-employed as a woodworker and construction worker. Prior to 1991, Mr. Miller began construction of a home on a 5.19-acre parcel of property located in the Town of New Bremen in Lewis County, New York. However, Mr. Miller was unable to finance the entire

project.  Mr. Miller conveyed the unfinished house and property (collectively, the New Bremen property) to petitioner by deed dated February 23, 1989.  On February 23, 1989, petitioner signed a building loan and agreement (the mortgage) with the St. Lawrence National Bank (the bank) in which the bank agreed to lend petitioner $44,000, which was to be used for the construction and completion of the unfinished house.  These improvements included the completion of a cellar, septic tank, exterior framing, and interior finish work and the installation of external siding, electricity, and plumbing.  According to petitioner, she used the loan proceeds of $44,000 to purchase the New Bremen property from Mr. Miller.  The record contains no indication as to the cost of the land or the finished house.

Mr. Miller used the $44,000 to complete construction of the unfinished house.  After the completion of the house, Mr. Miller resided in it with his family and faithfully made all required payments with respect thereto; i.e., mortgage, taxes, repairs. Petitioner included $3,416.92 in her gross income, which she described as related to the mortgage payments made by Mr. Miller.

On Schedule A of their joint Federal income tax return, petitioner and Mr. Ganong claimed a deduction for job expenses and other miscellaneous expenses of $12,195.49.  Of this amount, $4,125 related to research expenses; $1,274.80 related to petitioner's job search expenses; $3,378 related to Mr. Ganong's

job search expenses; and $3,417.69 related to a "not-for-profit" rental.[3]  In the notice of deficiency, respondent disallowed the entire amount for lack of substantiation.

General Legal Principles

We begin by noting that, as a general rule, the Commissioner's determinations are presumed correct, and that the taxpayer bears the burden of proving that those determinations are erroneous.  Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).  Moreover, deductions are a matter of legislative grace, and the taxpayer bears the burden of proving that he or she is entitled to any deduction claimed.  Rule 142(a); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934).  This includes the burden of substantiation.  Hradesky v. Commissioner, 65 T.C. 87, 90 (1975), affd. per curiam 540 F.2d 821 (5th Cir. 1976).

Section 162(a) provides that "There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business".

Section 6001 and the regulations promulgated thereunder require taxpayers to maintain records sufficient to permit verification of income and expenses.  As a general rule, if the

---

[3]  The $.77 discrepancy between the miscellaneous income item and the "not-for-profit" rental deduction was not addressed in the record.

trial record provides sufficient evidence that the taxpayer has incurred a deductible expense, but the taxpayer is unable to adequately substantiate the amount of the deduction to which he or she is otherwise entitled, the Court may estimate the amount of such expense and allow the deduction to that extent. Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930). However, in order for the Court to estimate the amount of an expense, we must have some basis upon which an estimate may be made. Vanicek v. Commissioner, 85 T.C. 731, 743 (1985). Without such a basis, any allowance would amount to unguided largesse. Williams v. United States, 245 F.2d 559, 560 (5th Cir. 1957).

In the case of travel expenses, specifically including meals and entertainment, as well as certain other expenses, section 274(d) overrides the so-called Cohan doctrine. Sanford v. Commissioner, 50 T.C. 823, 827 (1968), affd. per curiam 412 F.2d 201 (2d Cir. 1969); sec. 1.274-5T(a), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985).

Under section 274(d), no deduction may be allowed for expenses incurred for travel, or certain other expenses, on the basis of any approximation or the unsupported testimony of the taxpayer. Section 274(d) imposes strict substantiation requirements to which taxpayers must strictly adhere. Thus, section 274(d) specifically proscribes deductions for travel expenses in the absence of adequate records, or of sufficient

evidence corroborating the taxpayer's own statement.  At a minimum, the taxpayer must substantiate:  (1) The amount of such expense, (2) the time and place such expense was incurred, and (3) the business purpose for which such expense was incurred.

Section 274(d)(4) also provides that no deduction is allowable with respect to listed property, as defined in section 280F(d)(4), unless the deductions are substantiated in accordance with the strict substantiation requirements of section 274(d) and the regulations promulgated thereunder.  Passenger automobiles are included in the definition of listed property in section 280F(d)(4).  Sec. 280F(d)(4)(A)(i).

To substantiate a deduction attributable to listed property, a taxpayer must maintain adequate records or present corroborative evidence to show:  (1) The amount of the expense, (2) the time and place of the use of the listed property, and (3) the business purpose for the use.  Sec. 1.274-5T(b)(6), Temporary Income Tax Regs, 50 Fed. Reg. 46016 (Nov. 6, 1985).

In order to substantiate a deduction by means of adequate records, a taxpayer must maintain a diary, a log, or a similar record, and documentary evidence, which, in combination, are sufficient to establish each element of each expenditure or use. Sec. 1.274-5T(c)(2)(i), Temporary Income Tax Regs., 50 Fed. Reg. 46017 (Nov. 6, 1985).  To be adequate, a record must generally be written.  Each element of an expenditure or use that must be

substantiated should be recorded at or near the time of that expenditure or use.  Sec. 1.274-5T(c)(2)(ii)(A), Temporary Income Tax Regs., 50 Fed. Reg. 46017 (Nov. 6, 1985).

Thus, under section 274(d), and as with travel expenses, no deduction may be allowed for expenses incurred for the use of a passenger automobile on the basis of any approximation or the unsupported testimony of the taxpayer.  E.g., Golden v. Commissioner, T.C. Memo. 1993-602.

Research Expenses

Petitioner claimed a Schedule A deduction for research expenses in the amount of $4,125, of which respondent has conceded $3,443.89.  Of the remaining amount ($681.11), $343.20 relates to petitioner's claim that she is entitled to a deduction for more mileage than respondent allowed; $108 pertains to petitioner's contention that section 274(n) does not pertain to her meals expenses; and $229.91 pertains to miscellaneous expenses.

With regard to the mileage expense, petitioner drove from Rochester, New York, to Portland, Oregon, to attend the Second International Family Nursing Conference.  Based upon a stipulated Rand McNally mileage chart, respondent conceded that petitioner

was entitled to mileage of 2,752.[4] Petitioner contends that the trip to Portland was 4,000 miles.

Petitioner testified that she had a "trip-tic" from AAA which indicated that the mileage to Portland was 4,000 miles; however, the trip-tic is now lost. Petitioner presented a repair bill dated May 15, 1991, the day prior to her departure for Portland, which indicates an odometer reading of 102,321. However, nothing in the record indicates petitioner's mileage upon arrival in Portland. Other than this repair bill, petitioner presented no other documentation such as a diary, log, or similar evidence to substantiate her mileage as required by section 274. Thus, petitioner has failed to substantiate the additional mileage. Moreover, any portion of the trip that could be considered for personal purposes, such as a sightseeing side trip, would not be an ordinary and necessary deductible business expense. Accordingly, petitioner is not entitled to a deduction for mileage in excess of the amount previously allowed by respondent.

We note that petitioner did not claim a deduction for her return trip to Rochester, but stated that the return trip was claimed as a portion of Mr. Ganong's job search expenses.

---

[4] Respondent calculated this amount using the mileage from Rochester, New York, to Buffalo, New York, (78 miles) plus the mileage from Buffalo, New York, to Portland, Oregon (2,674 miles).

However, we believe this expense is properly characterized as a portion of petitioner's business expenses, and we shall address this issue now. Respondent's counsel conceded that petitioner is entitled to a deduction for such mileage.[5] Accordingly, petitioner is entitled to an additional deduction for mileage based on 2,662 miles for her return trip to Rochester.

We now consider petitioner's contention that she is entitled to a deduction for the full amount of the meals expense and is not subject to the 20-percent limitation as provided in section 274(n). Section 274(n) limits the deduction for meals and entertainment expenses to 80 percent of such expenses. Section 274(n)(2) provides for certain exceptions to this limitation. However, petitioner has not shown that any of these exceptions covers the expenses of meals incurred in connection with her attendance at a conference, convention, or other similar

---

[5] We note that petitioner also drove from Portland to Los Angeles where she spent the summer working as a consultant. However, the 1991 return included a Schedule C for her consulting business, that reflects a deduction for automobile expenses of $921.91. Inasmuch as we do not know the details of this allowed deduction, and petitioner has not made a separate claim for the trip to Los Angeles, we shall not consider this matter any further.

meeting.[6]  Accordingly, petitioner is only entitled to deduct 80 percent of her meals expenses.

Petitioner argues that pursuant to IRS Publication No. 17 for 1991, she is entitled to a 100-percent deduction for her meals expenses.  At trial, petitioner purported to quote a section of that publication.  However, we were unable to locate in that publication the section to which petitioner referred at trial.  Rather, IRS Publication No. 17 for 1991 refers to IRS Publication No. 463 for 1991 for a list of expenses which are exceptions to the 80-percent limitation of section 274(n).  In our examination of IRS Publication No. 463 for 1991, we located the following paragraph which is identical, with the exception of the last sentence, to the section which petitioner read at trial:

> TRADE ASSOCIATION MEETINGS.  You can deduct expenses that are directly related to and necessary for attending business meetings or conventions of certain exempt organizations.  These organizations include business leagues, chambers of commerce, real estate boards, trade associations, and professional associations.  The expenses of your attendance must be related to your active trade or business.  These expenses are subject to the 80-percent limit on entertainment expenses. (Emphasis added.)

Obviously, petitioner failed to read the last sentence.  Clearly, IRS Publication No. 463 does not authorize a 100-percent

---

[6]  Sec. 274(n)(2) includes an exception for certain expenses that are described in sec. 274(e)(2), (3), (4), (7), (8), and (9).  Sec. 274(e)(6), which refers to expenses related and necessary to attendance at a business meeting or convention of certain organizations, is not included as an exception.

deduction for petitioner's meals expenses which were incurred to attend various conventions.  Moreover, we note that petitioner's reliance on IRS Publications 17 and 463 is misplaced.  We have previously held that such publications are not authoritative sources of Federal tax law, and, therefore, do not control the outcome of issues in this case.  Zimmerman v. Commissioner, 71 T.C. 367, 371 (1978), affd. without published opinion 614 F.2d 1294 (2d Cir. 1979).

With regard to the remaining amount of $229.91 for miscellaneous expenses, petitioner presented no testimony or documentation to support a deduction for this amount.  Accordingly, petitioner is not entitled to a deduction for such expenses.

Job Search Expenses

Petitioner claimed a Schedule A deduction for her job search expenses in the amount of $1,274.80 and for Mr. Ganong's job search expenses in the amount of $3,378.

Petitioner testified that the amount claimed for her job search expenses relates to two separate trips to the Los Angeles area.  Petitioner claimed $349 related to the first trip which includes one half of the airfare from Rochester, New York, to Los Angeles, California, a per diem meals allowance, laundry expenses, and transportation to and from the airport.  Petitioner claimed $925.80 related to the second trip which includes

airfare, transportation to and from the airport, a per diem meals allowance, the cost of newspapers, laundry expenses, and miscellaneous expenses.

Section 162(a) allows a deduction for ordinary and necessary business expenses. Such deductible expenses include those incurred in searching for new employment in the employee's same trade or business. Cremona v. Commissioner, 58 T.C. 219 (1972); Primuth v. Commissioner, 54 T.C. 374 (1970). If the employee is seeking a job in a new trade or business, however, the expenses are not deductible under section 162(a). Frank v. Commissioner, 20 T.C. 511, 513 (1953); Hobdy v. Commissioner, T.C. Memo. 1985-414; Evans v. Commissioner, T.C. Memo. 1981-413. Petitioner bears the burden of proving that the expenses were of a business nature rather than personal and that said expenses were ordinary and necessary. Rule 142(a); Welch v. Helvering, 290 T.C. at 115.

With regard to the trip to Los Angeles from December 15, 1990, through January 7, 1991, petitioner did not present any documentation or detailed testimony concerning the specific job search activities in which she engaged during her trip, other than making telephone calls and mailing resumes. Moreover, the record contains no information regarding the amount of time she devoted to such activity. Although we believe petitioner engaged in some job search activities, there were personal reasons for her to be in Los Angeles. We think it significant that she

stayed in the home she owned in the Los Angeles area, that her son lived in the home, and that her visit occurred during the holiday season.  These facts, together with the fact that the time spent on job search activities was minimal, lead us to conclude that the primary purpose of the trip was personal and that the portion of the expenses that could be allocated to any job search activities would be minimal at best.  Accordingly, petitioner is not entitled to a deduction for expenses associated with that trip.

With regard to the second trip to Los Angeles from December 18, 1991, through December 31, 1991, petitioner presented a daily calendar for 1991, which indicates that she interviewed at Kaiser Research Group and CSUN.  In addition, petitioner made telephone calls related to resumes which she had sent to prospective employers in the area.  Although the matter is not free from doubt, due to some of the same circumstances being present as in the first trip, we conclude that the primary purpose for the second trip was for business purposes and that petitioner is entitled to a deduction for job search expenses related to this trip.

Petitioner presented an airline receipt for $481 from American Airlines and testified that she incurred shuttle expenses of $8.  Accordingly, we shall allow petitioner a deduction for job search expenses of $489.

Petitioner testified that she incurred miscellaneous expenses related to her job search activities including newspaper costs. Petitioner presented no documentation or detailed testimony concerning these expenses. Thus, she is not entitled to a deduction for these expenses.

Petitioner also contends that she is entitled to a per diem deduction for meals expenses for the 14 days during which she was in Los Angeles. Rather than requiring that a taxpayer substantiate the amount of the expenses incurred for meals, a per diem deduction may be allowed for meals expenses incurred away from home when a taxpayer satisfies all of the other requirements of sections 162(a)(2) and 274(d). Sec. 274(d); sec. 1.274-5T(j), Temporary Income Tax Regs, 50 Fed. Reg. 46032 (Nov. 6, 1985); Rev. Proc. 90-60, 1990-2 C.B. 651, 653. This amount will be deemed substantiated so long as the elements of time, place, and business purpose of the travel expenses are substantiated. Rev. Proc. 90-60, 1990-2 C.B. 653. The per diem meals amount includes incidental expenses such as laundry expenses. Rev. Proc. 90-60, 1990-2 C.B. 652. Because petitioner has substantiated the elements of time, place, and business purpose with respect to her second job search trip to Los Angeles, she is entitled to a per diem deduction for meals expenses for her 14-day trip. The record does not reflect the allowable per diem amount for Los Angeles in a situation where housing is not included. This may

have to be resolved in the Rule 155 proceeding.  However, since the per diem amount includes laundry expenses, she is not entitled to an additional deduction for laundry expenses.

We now consider the issue of Mr. Ganong's job-search expenses.[7]  Mr Ganong did not testify, and petitioner presented no detailed testimony or documentation regarding Mr. Ganong's job search activities.  Moreover, other than the receipt for a plane ticket, petitioner has presented nothing to substantiate the amount claimed for Mr. Ganong's job search expenses.  In addition, based on petitioner's testimony that Mr. Ganong, a self-employed artist, was seeking employment in the business end of the art field, such as a gallery, it appears that Mr. Ganong was seeking a job in a new trade or business.  Based on the foregoing reasons, petitioner is not entitled to a deduction for Mr. Ganong's job search expenses.

Not-for-profit Rental

Petitioner claimed a Schedule A deduction for "not-for-profit" rental expenses in the amount of $3,417.69.  Petitioner testified that this amount relates to the mortgage that Mr. Miller paid during 1991 and for which petitioner included in income $3,416.92.  Although the facts seem to indicate that petitioner was an accommodation maker, realizing neither income

---

[7]  We note that a portion of the disallowed amount has been allowed as petitioner's return trip from Los Angeles to Rochester.  See <u>supra</u> p. 13.

nor expense, both parties characterized this issue as a "not-for-profit" rental involving the provisions of section 183(b), and we shall address those issues.

Pursuant to section 183(b), if an activity is not engaged in for profit, section 183(b) separates the claimed deductions into two groups. Section 183(b)(1) allows only those claimed deductions which are not dependent upon a profit objective, e.g., interest and taxes. See Brannen v. Commissioner, 78 T.C. 471, 499-500 (1982), affd. 772 F.2d 695 (11th Cir. 1984); Ritter v. Commissioner, T.C. Memo. 1996-15. Section 183(b)(2) allows the balance of the deductions that would otherwise be permitted only if the activity were engaged in for profit, but only to the extent that the gross income derived from the activity exceeds the deductions allowed under paragraph (1). See Green v. Commissioner, T.C. Memo. 1989-436. Depreciation deductions are subject to the limitations of section 183(b)(2). Sec. 1.183-1(b)(1)(iii), Income Tax Regs.

A loan summary document from the Community Bank, N.A. (presumably the successor to the original mortgagor) reflects the details of a loan to petitioner of $44,000 at a 7.25-percent interest rate, payable in 180 monthly payments, the first 60 of which were for $366.57. We attempted to calculate the amount of

interest paid during 1991 from this information, but were unable to arrive at the amount claimed by petitioner.[8]

Section 167 allows as a depreciation deduction a reasonable allowance for the exhaustion, wear and tear of property used in a trade or business, or property held for the production of income. Under section 168, depreciation for residential rental property is calculated based on the straight line method using a recovery period of 27.5 years. Sec. 168(a), (b)(3), (c)(1).

The record does not include the original cost of the land or completed house. However, the record does indicate that the cost to complete the house was at least $44,000. Assuming the depreciable basis of the house to be $44,000, the maximum allowable depreciation deduction would be $1,600.

We believe, and so hold, that sufficient interest and depreciation deductions are available to eliminate any gain with respect to this property; of course, no loss is allowable.

To reflect the resolution of the issues set forth above,

Decision will be

entered under Rule 155.

---

[8] Based on our calculations, the total mortgage payments for 1991 should have been $4,398.84, consisting of $2,971.91 in interest and $1,426.93 in principal payments.