T.C. Summary Opinion 2006-13

UNITED STATES TAX COURT

RICK D. LAMB AND SUSAN L. STORY, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 10051-04S.              Filed January 30, 2006.

Rick D. Lamb, pro se.

<u>Aimee R. Lobo-Berg</u>, for respondent.

COUVILLION, <u>Special Trial Judge</u>:  This case was heard pursuant to section 7463 in effect when the petition was filed.[1] The decision to be entered is not reviewable by any other court, and this opinion should not be cited as authority.

------

[1]Unless otherwise indicated, subsequent section references are to the Internal Revenue Code in effect for the years at issue.  All Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent determined deficiencies of $13,627 and $12,787 in petitioners' Federal income taxes for 1999 and 2000, respectively.[2] The issues for decision are: (1) Whether petitioners are entitled to deductions for trade or business activities in connection with a legal/medical consultation activity of Rick D. Lamb (petitioner); (2) whether salary income earned by petitioner as an employee can be considered as trade or business income of the legal/medical consultation activity; and (3) whether petitioner is entitled to a deduction for job search expenses.

Some of the facts were stipulated. Those facts, with the annexed exhibits, are so found and are made part hereof. Petitioners' legal residence at the time the petition was filed was Portland, Oregon. During the years at issue, petitioners were residents of Helena, Montana.[3]

---

[2]Rick D. Lamb (petitioner) and Susan L. Story were married to each other during the years in question but were divorced at the time of trial. Susan L. Story did not appear at trial. Petitioner advised the Court that his former spouse had knowledge of the trial and agreed that petitioner would present the case on their joint behalf. Respondent did not move to dismiss for failure to prosecute as to Susan L. Story.

[3]Generally, the burden of proof is on the taxpayer to show that the determinations in the notice of deficiency are in error. Rule 142(a). Sec. 7491, under certain circumstances, shifts the burden of proof to the Commissioner. However, for the burden to be placed on the Commissioner, the taxpayer must comply with the substantiation and record-keeping requirements of the Internal Revenue Code. Sec. 7491(a)(2)(A) and (B). On this record, petitioners have not wholly satisfied that requirement;

(continued...)

Several concessions were made by the parties at trial. Some of these concessions are noted in the opinion and are particularized in respondent's posttrial brief.

Petitioner is a medical doctor. During the years at issue, he was employed in that capacity by the Department of Veterans Affairs (the V.A.), an agency of the United States. He worked at the V.A. hospital at Helena, Montana. In addition to holding a medical degree, petitioner is an attorney. He was admitted to the Montana State bar in April 2000.

For the 2 years at issue, petitioner's salary with the V.A. was $65,351 and $110,920, respectively, for 1999 and 2000. Those amounts were reported as income on petitioners' joint Federal income tax returns for 1999 and 2000.

In addition to his full-time employment with the V.A., petitioner maintained in his home what he considered to be a private medical practice and a law practice. In addition, petitioner maintained what he considered to be a consultation activity wherein he offered consultation services to doctors and lawyers with respect to reciprocal medical and legal issues. Petitioner also was available to appear before professional groups to address such issues.

---

[3](...continued)
therefore, the burden does not shift to respondent under sec. 7491. Higbee v. Commissioner, 116 T.C. 438 (2001).

As to his private medical practice, all of petitioner's patients were elderly and indigent. Petitioner did not charge for his services to them because his patients were all unable to pay. There is no evidence in the record that any of these patients had medical insurance or were covered by Medicare, Medicaid, or any other form of public assistance. Petitioner explained that this unusual situation came about from his days as a private practitioner, before he began working at the V.A. hospital. When he accepted his full-time job with the V.A., all of his financially capable patients went to other doctors, and his indigent patients had nowhere to go. Petitioner felt an obligation to continue attending to their needs. However, petitioner did not see any patients at his home. He attended to them at either public clinics or other health/medical facilities. It appears that petitioner was not allowed to see private patients at the V.A. hospital. There is also no evidence that petitioner offered consultation services at his home to attorneys or other professionals about legal and medical issues. There is no evidence that petitioner ever addressed any legal or medical professional associations regarding his dual professions, although petitioner indicated that he had addressed high school groups about his two professions.

As to his law practice, petitioner's legal clients were also nonpaying. Virtually all of his work in that area involved

habeas corpus proceedings of incarcerated clients.  Obviously, he did not see these clients at home, and petitioner received no fees for this activity during the 2 years at issue.  There is no evidence that petitioner was involved in a habeas corpus proceeding during the 2 years at issue.

Petitioners considered these two described activities as a trade or business for Federal income tax purposes.  His claimed office was in his home.

For 1999 and 2000, petitioners filed joint Federal income tax returns, each of which included a Schedule C, Profit or Loss from Business.  On Schedule C for 1999, petitioners reported zero gross income, expenses of $50,312, and a net loss of $50,312.  On the 2000 Schedule C, petitioners reported negative gross income

of $500, expenses of $43,735, and a net loss of $44,235.[4]  No legal or consultation fees were reported as income.

The following expenses were claimed as Schedule C deductions on the 1999 and 2000 income tax returns:

---

[4]The negative gross income of $500 on Schedule C, Profit or Loss From Business, for 2000 resulted from the reporting of $1,200 in gross receipts and cost of goods sold of $1,700, resulting in negative gross income of $500.  Part III, Cost of Goods Sold, of Schedule C for that year listed a beginning inventory of $10,200, an ending inventory of $8,500, and cost of goods sold of $1,700, thus the $500 in negative gross income reported on Part I of the return.  Petitioner was questioned at trial as to how, as a consultant, he incurred "cost of goods sold", since he was an attorney and a doctor and was not in the business of buying and selling merchandise.  The revenue agent's report makes the same observation:  "I do not understand why an attorney would have cost of goods sold * * * attorneys sell a service, they do not manufacture, nor purchase and resell a product."  Petitioner's explanation at trial was that he owned a computer that had originally cost $1,700, and it was sold during 2000 for $1,200.  The revenue agent disallowed the $1,700 adjustment for cost of goods sold.  Petitioner conceded the issue at trial.  Because the transaction involved the sale of an asset, it should have been reported on Schedule D, Capital Gains and Losses.  It follows that the $1,200 reported as gross receipts on the Schedule C for tax year 2000 was not in fact gross receipts from petitioner's claimed business activity as a doctor/lawyer consultant; therefore, petitioner realized no gross income from his activity for either 1999 or 2000.

1999

| | |
|---|---|
| Car & truck expenses | $ 1,571 |
| Depreciation | 6,110 |
| Insurance (other than health) | 1,705 |
| Interest (other than mortgage) | 12 |
| Office expenses | 15,740 |
| Taxes & licenses | 1,752 |
| Travel | 11,581 |
| Meals & entertainment (net) | 1,307 |
| Utilities | 2,609 |
| Other expenses[1] | 7,925 |
| Total | $50,312 |

[1]A conglomeration of expenses that includes meals and lodging, hotel rooms, fuel, books/journals, postage stamps, and seven items for petitioner Susan Story totaling $2,017.

2000

| | |
|---|---|
| Car & truck expenses | $ 9,126 |
| Depreciation | 6,302 |
| Interest (other than mortgage) | 186 |
| Office expenses | 10,032 |
| Taxes & licenses | 1,510 |
| Travel | 9,628 |
| Meals & entertainment | 189 |
| Utilities | 2,048 |
| Other expenses | 2,707 |
| Expenses (business use of home) | 2,007 |
| Total | $43,735 |
| Negative Schedule C gross income | 500 |
| Total | $44,235 |

In the notice of deficiency, respondent disallowed $47,299 of the $50,312 in deductions claimed on the 1999 Schedule C. For the year 2000, respondent disallowed the $1,700 adjustment for cost of goods sold,[5] which petitioner conceded at trial, and

[5]At trial, the parties settled the Schedule D adjustment for 1999. On their return, petitioners reported capital gain income
(continued...)

$39,193 of the $43,735 in deductions claimed on Schedule C for that year.  The amounts that respondent did not disallow were allowed as Schedule A, Itemized Deductions.

On the 1999 return, petitioners reported capital gain income of $8,853; however, no Schedule D, Capital Gains and Losses, accompanied the return.  Respondent determined that petitioners realized $30,270 in capital gains; however, at trial, the parties settled this issue with petitioners' conceding capital gains of $21,417 for 1999.

For the 2 years at issue, petitioners claimed Schedule A deductions of $28,331 for 1999 and $36,950 for 2000.  Respondent disallowed $9,253 and $13,435 of these deductions, respectively, for 1999 and 2000.  Some of the adjustments were computational, based on other adjustments, and others were disallowed for lack of substantiation.  Still other adjustments, as noted earlier, included allowance of some of the amounts disallowed as Schedule C deductions.  Finally, miscellaneous itemized deductions of $16,310 on the 2000 return were reduced to $12,581 for lack of substantiation.

On Schedule C for petitioners' 1999 and 2000 tax years, respondent determined that a considerable portion of the claimed

[5](...continued)
of $8,853.  In the notice of deficiency, respondent determined the capital gains income was $30,270.  At trial, the parties settled that issue for the amount of $21,417.

deductions were for essentially personal expenses that did not constitute trade or business expenses. Some of the claimed deductions were for job search expenses, which respondent disallowed. To the extent any of the Schedule C deductions were allowed, they were allowed as miscellaneous itemized deductions on Schedule A of the returns.

Petitioners contend that the disallowed Schedule C deductions were all for job search expenses. In auditing petitioners' returns for the 2 years at issue, respondent determined that the expenses deducted for the 2 years at issue were essentially and primarily personal expenses. For example, the Schedule C for 1999 included expenses incurred by petitioners in the use of their motor home beginning in January through mid-April to various places in the West and Southwest. Petitioners contend these were job search expenses. Petitioner did have between 15 and 20 interviews with doctors and at hospitals, although no offers of employment were ever made. Petitioner's journey in quest of a job included San Diego, California, Arizona, Nevada, and the Oregon coast. The trip, however, included visits to vineyards and wine tasting in California, Sea World at San Diego, the Grand Canyon in Arizona, other tourist attractions, and a sister at Scappore, Oregon. During the year 2000, petitioners took another extended excursion in their motor home to New England, including Burlington, Vermont; Niagra Falls,

New York; New Hampshire; Massachusetts; and Connecticut.  These trips included visits to Bozeman, Montana, where petitioner's son lived, to Missoula, Montana, where petitioner's daughter lived, and to Park City, Montana, where Mrs. Story's three children lived.  Petitioners also visited other relatives in Virginia Beach, Virginia.  Despite the obvious personal nature of these excursions, petitioner contends, nonetheless, that these trips were principally in search of a job.  All expenses relating to these trips were deducted as Schedule C trade or business expenses for the 2 years in question.

Respondent's position is that, because petitioner realized no income from his claimed activity for the 2 years at issue, he was not engaged in a trade or business; therefore, none of the Schedule C expenses are deductible as trade or business expense, and, to the extent that any of the claimed expenses were deductible, an appropriate allowance was made for such expenses as itemized deductions.  The Court further notes that none of the job search expenses claimed related to a relocation of petitioner's claimed self-employment medical/legal consultation activity.  All of the job searching endeavors were directed to petitioner's employee status as a medical doctor.

The Court agrees with respondent's argument.  The law is well settled that a business is a course of activities engaged in for profit.  Activities that are for a purpose other than profit

do not evidence business engagement. Indus. Research Prods., Inc. v. Commissioner, 40 T.C. 578 (1963). In Evan v. Commissioner, T.C. Memo. 2004-180, the Court disallowed deductions claimed for Schedule C business expenses where the only income realized was from an employment relationship and not from a Schedule C trade or business.

The Court rejects petitioner's argument that his salary from the V.A. should be aggregated or attributed to his Schedule C activities as a counterargument to respondent's determination that, because there was no trade or business income, the expenses related thereto are not deductible. Petitioners cited no authority to support this argument. Petitioner was an employee of the V.A., and, as such, his wages or salary were subject to a treatment different from income from or losses from a self-employed trade or business activity. As an employee with the V.A., he was issued Forms W-2, Wage and Tax Statement, which reflected deductions for Social Security taxes and other deductions that would not be applicable in a self-employed activity. The Court, therefore, rejects that argument. An employer-employee relationship is not a self-employment activity.

The Court finally considers whether petitioners are entitled to deductions for job search expenses. Such expenses were claimed by petitioner as Schedule C trade or business expenses. However, it is obvious, as noted earlier, that, if petitioner was

in fact seeking a job, it was not in connection with his claimed self-employment activity. All of the interviews petitioner had related to the practice of medicine, as an employee. Therefore, to the extent petitioner incurred any job search expenses, those expenses would not be a Schedule C trade or business expense. The expense would be an employee business expense that would be claimed on Schedule A of the tax return.

Section 162(a) allows a deduction for ordinary and necessary business expenses. It is recognized that such deductible expenses include those incurred searching for new employment in the employee's same trade or business. Cremona v. Commissioner, 58 T.C. 219 (1972); Primuth v. Commissioner, 54 T.C. 374 (1970). The evidence in this case shows that petitioner was interviewed on several occasions for employment as a medical doctor (and not as an unpaid consultant/adviser). As also noted and described, petitioner's job search consisted of two extended trips he and his wife took, by mobile home, during 1999 and 2000, which included essentially the east and west coasts of the United States. On each of these trips, petitioners visited members of their families and numerous tourist attractions. The job interviews petitioner had were, in the Court's view, incidental to the main purpose of the trips--to visit family and tourist attractions. Petitioners essentially took a vacation and claimed the expenses as tax deductions. The regulations provide that

travel expenses are deductible only if the travel is related primarily to the taxpayer's business. Sec. 1.162-2(b)(1), Income Tax Regs. An important factor in this regard is the amount of time spent on personal activities compared to the time spent on activities related to the taxpayer's trade or business. Sec. 1.162-2(b)(2), Income Tax Regs. The Court holds that the expenses deducted by petitioners in this regard do not meet the tests of section 1.162-2(b)(1), Income Tax Regs. Petitioners' trips were primarily personal, and the job interviews petitioner had while on these trips were incidental and not the primary reason for the trips. Petitioners, therefore, are not entitled to job searching expenses in excess of any amounts that may have been allowed by respondent.

As noted earlier, respondent made several concessions. Those concessions and the amounts are highlighted in respondent's Brief in Answer, which was filed by respondent after trial. Those concessions will be reflected in the decision to be entered.

Reviewed and adopted as the report of the Small Tax Case Division.

Decision will be entered under Rule 155.