ROBERT EUGENE AND FAY STULL EVANS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Evans v. Commissioner
Docket No. 13544-79.
United States Tax Court
T.C. Memo 1981-413; 1981 Tax Ct. Memo LEXIS 329; 42 T.C.M. (CCH) 602; T.C.M. (RIA) 81413; August 10, 1981. *329 Held, a payment made to petitioner Robert Eugene Evans for 60 days of accrued leave upon his retirement from the United States Air Force is includable in his gross income. Held further, petitioners are not entitled to a claimed job-hunting expense deduction under sec. 162(a), I.R.C. 1954. Robert Eugene Evans, pro se. Martha Combellick, for the respondent. WILES
MEMORANDUM FINDINGS OF FACT AND OPINION WILES, Judge: Respondent determined a deficiency of $ 1,241 in petitioners' 1977 Federal income tax. The issues for decision are: 1. Whether a payment made to petitioner Robert Eugene Evans for sixty days of accrued leave upon his retirement from the United States Air Force is includable in his gross income. 2. Whether petitioners are entitled to a claimed job-hunting expense deduction under section 162(a). [1]
FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Robert Eugene Evans (hereinafter petitioner) and Fay Stull Evans, husband and wife, resided in Chandler, Arizona, when they filed their 1977 joint Federal income tax return and when they filed their petition in this case. Petitioner was in the United States Air Force for 22 1/2 years. During his *331 military career, petitioner was a commissioned officer and had served in various capacities, including service as a pilot, teacher, and programs and plans officer with NATO and the Joint Chiefs of Staff. Petitioner had also served in combat. From 1973 until February 1977, petitioner was Special Assistant to the Base Commander at Williams Air Force Base, Arizona. In this capacity, petitioner had from five to twelve people under his command and performed a "potpourri of duties," encompassing a wide variety of special assignments. Among other duties, he was responsible for the relocation of base families during the renovation of base housing, assessed base recreation areas, established an aircraft museum, dealt with juvenile delinquency problems, and managed the Bicentennial Ceremonies for the base. In February 1977, petitioner retired from the Air Force at the rank of Lieutenant Colonel. Upon retiring, he was paid $ 4,102.80 for 60 days of accrued leave, the maximum allowed by law. No part of this payment was designated to have accrued during combat. After his retirement from the Air Force, petitioner sought employment in the private sector. From April 27, 1977 through May 1, 1977, petitioner *332 and his wife visited the Washington, D.C., area. On April 28, 1977, they met with a representative of Martin & Otterback, Inc., a company specializing in engine rebuilding and automotive parts, in Bladensburg, Maryland. Petitioner interviewed for a position that would entail assuming many of the duties of the retiring vice-president of the company. The company was interested in petitioner because of his background and the contacts he had made in the Washington area while assigned to the Pentagon during his military career. While in Washington, petitioner and his wife also visited family and friends. During this trip, they incurred the following expenses: Airfare
$ 612.00
Car Rental
101.67
Lodging
47.09
Gas
10.96
Attorney Fees
150.00
Meals and Miscellaneous
274.45
From July 18, 1977 through July 23, 1977, petitioner and his wife visited San Diego, California. Although petitioner searched for employment during this trip, he had not scheduled any job interviews prior to his departure for San Diego. While in San Diego, petitioner and his wife also visited friends and spent time sightseeing and shopping. During this trip, they incurred the following expenses: *333 Travel
$ 182.92
Meals
105.21
Lodging (rate for single)
87.80
Phone
4.42
Petitioner's efforts to secure employment were unsuccessful, and he returned to college in 1978. On their 1977 return, petitioner and his wife claimed a job-junting expense deduction of $ 1,585 for the expenses of their trips to Washington and San Diego. They did not include the payment that petitioner received for accrued leave in their gross income. In the notice of deficiency, respondent disallowed the claimed job-hunting expense deduction and determined that petitioner had additional income of $ 4,102.80, attributable to the payment for accrued leave. OPINION We must first decide whether the payment made to petitioner for 60 days of accrued leave upon his retirement from the Air Force is includable in his gross income. It is respondent's position that the payment made to petitioner for accrued leave represents compensation for services and constitutes gross income under section 61(a). Furthermore, respondent maintains that there is no statutory provisions, either within the Internal Revenue Code or any other title of the United States Code, which would allow petitioner to *334 exclude the payment from his gross income. Accordingly, respondent insists that the payment is includable in petitioner's gross income. We agree. Section 61(a) provides that gross income includes "all income from whatever source derived." Except in those instances where Congress has provided a specific exemption, section 61(a) requires the inclusion of all income in the computation of gross income. Commissioner v. Glenshaw Glass Co., 348 U.S. 426, 430 (1955). It is clear that a payment for accrued leave constitutes income. Baker v. Commissioner, 70 T.C. 460, 462-463 (1978). Moreover, in the instant case there is no provision that would allow petitioner to exclude the payment made to him for accrued leave from his gross income. [2] Consequently, petitioner must include this payment in his gross income.
*335 Petitioner, however, contends that it would be inequitable to include this payment in his gross income because by law he could only receive compensation for a maximum of 60 days of accrued leave upon his retirement even though he accumulated a far greater amount. See 37 U.S.C. sec. 501. Nevertheless, absent a specific statutory exclusion, this payment must be included in petitioner's gross income. Moreover, since this Court does not have the jurisdiction of a court of equity, we may not consider such an argument. Hays Corporation v. Commissioner, 40 T.C. 436, 442-443 (1963), affd. 331 F. 2d 422 (7th Cir. 1964), cert. denied 379 U.S. 842 (1964). If petitioner wishes to secure a remedy for his grievances, he must direct his pleas to Congress. Although petitioner has argued that the payment he received for accrued leave is exempt from taxation under section 7 of the Armed Forces Leave Act of 1946, ch. 931, 60 Stat. 963, 967, such an argument is without merit. In pertinent part, section 7 of the Armed Forces Leave Act of 1946, supra, provided that payments made for accrued leave in excess of 60 days accumulated *336 on or prior to August 31, 1946, were exempt from taxation. It is our conclusion that such an exemption is clearly inapplicable to petitioner. [3] Furthermore, section 7 of the Armed Forces Leave Act of 1946, supra, was repealed by Pub. L. No. 87-649, sec. 14, 76 Stat. 498 (1962). Finally, petitioner maintains that taxation of the payment he received for accrued leave is prohibited by Pub. L. No. 95-427, sec. 1, 92 Stat. 996 (1978), as amended by Pub. L. No. 96-167, sec. 1, 93 Stat. 1275 (1979). We reject this argument. Public L. No. 95-427, supra, [4] prohibited the issuance of regulations providing for the inclusion of any fringe benefit in gross income. It is clear, however, that respondent has not determined that the payment for accrued leave is includable in petitioner's gross income pursuant to a regulation issued contrary to Pub. L. No. 95-427, supra, but has consistently required the inclusion of such payments in gross income for a considerable period of time prior to 1978. See Rev. Rul. 73-187, 1973-1 C.B. 51; Rev. Rul. 71-343, 1971-2 C.B. 92; Rev. Rul. 55-249, 1955-1 C.B. 218. *337 See also Baker v. Commissioner, supra.
We next consider whether petitioner is entitled to the claimed job-hunting expense deduction under section 162(a) for the expenses incurred during his trips to Washington, D.C., and San Diego, California. Respondent contends that petitioner is not entitled to the claimed deduction because the expenses *338 were incurred in seeking employment in a new trade or business. Petitioner, on the other hand, argues that the expenses are deductible under section 162(a) because he was seeking employment that was closely related to the military duties he had performed as Special Assistant to the Base Commander at Williams Air Force Base for four years immediately prior to his retirement. We hold for respondent. Section 162(a) allows taxpayer to deduct "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business." This Court has held that expenses incurred in seeking new employment in the same trade or business are deductible under section 162(a). Cremona v. Commissioner, 58 T.C. 219 (1972); Kenfield v. Commissioner, 54 T.C. 1197 (1970); Primuth v. Commissioner, 54 T.C. 374 (1970). However, expenses incurred in seeking or investigating a new trade or business are not deductible under section 162(a). Dean v. Commissioner, 56 T.C. 895 (1971); Frank V. Commissioner, 20 T.C. 511, 513 (1953). See also Carter v. Commissioner, 51 T.C. 932, 934 (1969). *339 Prior to his retirement, petitioner was engaged in the business of serving as an officer in the United States Air Force. In seeking employment in the private sector upon retiring, petitioner was attempting to enter a new trade or business. See Carter v. Commissioner, supra at 934. We are convinced that petitioner's service as an Air Force officer cannot be compared to any employment he might have obtained outside the Air Force. The record reveals that petitioner performed a variety of unique duties throughout the course of his military career. Although petitioner attempts to characterize his duties during his final four years in the Air Force as essentially public relations and maintains that he sought similar employment after retiring, the record simply fails to support such a characterization of the facts. Our findings of fact show that the duties which petitioner performed for four years prior to his retirement in his capacity as Special Assistant to the Base Commander cannot be readily categorized. Indeed, at trial petitioner testified that he performed a "potpourri of duties" in such capacity and exhibited a significant degree of hesitation in classifying *340 those duties. Moreover, petitioner's testimony indicates that after leaving the Air Force he never limited his search for employment to any specific type of occupation, but rather that he "tried almost everything." While petitioner undoubtedly sought employment that would utilize the skills he acquired during his military career, he has failed to show us that there would not be substantial differences between the employment he sought to obtain in the private sector and his service as an Air Force officer. Compare Davis v. Commissioner, 65 T.C. 1014, 1019 (1976). Accordingly, we conclude that the expenses of petitioner's trips to Washington and San Diego were incurred in seeking a new trade or business, and therefore, petitioner may not deduct such expenses under section 162(a). To reflect the foregoing, Decision will be entered for the respondent. Footnotes
1. Unless otherwise indicated, statutory references are to the Internal Revenue Code of 1954, as amended.↩
2. Since no part of the accrued leave paid to petitioner was designated to have accrued during combat, petitioner has conceded that he is not entitled to any exclusion under sec. 112. See Baker v. Commissioner, 70 T.C. 460 (1978); Rev. Rul. 73-187, 1973-1 C.B. 51; Rev. Rul. 71-343, 1971-2 C.B. 92↩.
3. See also Rev. Rul. 55-249, 1955-1 C.B. 218↩.
4. Pub. L. No. 95-427, sec. 1, 92 Stat. 996 (1978) states: SECTION 1. FRINGE BENEFIT REGULATIONS. (a) In General.--No fringe benefit regulation shall be issued-- (1) in final form on or after May 1, 1978, and on or before December 31, 1979, or (2) in proposed or final form, on or after May 1, 1978, if such regulation has an effective date on or before December 31, 1979. (b) Definition of Fringe Benefit Regulation.--For purposes of subsection (a), the term "fringe benefit regulation" means a regulation providing for the inclusion of any fringe benefit in gross income by reason of section 61 of the Internal Revenue Code of 1954. Pub. L. No. 95-427, sec. 1, 92 Stat. 996 (1978), was amended by Pub. L. No. 96-167, sec. 1, 93 Stat. 1275 (1979), to extend the prohibition to May 31, 1981.↩